**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGELA FERRAINOLO,          )<br>                                                   )<br>     Plaintiff,                              )<br>                                                   )<br>     v.                                          )<br>                                                   )<br>JOANNE BARNHART,             )<br>COMMISSIONER OF SOCIAL )<br>SECURITY,                              )<br>                                                   )<br>     Defendant.                         ) | 2:06cv1127<br>**Electronic Filing** |

**MEMORANDUM OPINION**

June 14, 2007

**I.     INTRODUCTION**

Plaintiff, Angela Ferrainolo ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383 (c), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title II of the Social Security Act ("Act"), as amended. 42 U.S.C. §§ 401-433. The parties have filed cross motions for summary judgment, and the record has been developed at the administrative proceedings.

**II.    PROCEDURAL HISTORY**

Plaintiff filed an application for SSI benefits on March 19, 2004, alleging disability since April 1, 2003 due to depression, a heart problem, rotator cuff syndrome, a learning disability, and nerve damage in her neck. R. 32, 34, 55, 295, 301-302. Plaintiff's claim was initially denied, and she filed a timely request for an administrative hearing. R. 32, 39, 301. A hearing was held on February 14, 2006, in Pittsburgh, Pennsylvania, before Administrative Judge Elliott Bunce ("ALJ"). Plaintiff was represented by counsel, Katrine Erie, and Vocational Expert ("VE"), Karen Krull, also appeared and testified. R. 326-75. The ALJ issued an unfavorable decision on April 23, 2006, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 11-20. The ALJ's decision became the Commissioner's final decision when on May 18,

2006, the Appeals Council denied Plaintiff's request for review. R. 6-10. The instant action now seeks review of the Commissioner's final decision, and the matter is before this court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### III.    STATEMENT OF THE CASE

Plaintiff was born on April 17, 1980. R. 86. She is currently twenty-seven (27) years old, making her twenty-three (23) years old at the time of application for SSI benefits and twenty-five (25) years old at the time of the administrative hearing. R. 14. Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963. At the age of 14, an American couple adopted Plaintiff from an orphanage in Russia. R. 226. While Plaintiff claims to lack English language proficiency, she graduated from high school and completed some college level course work. Pl's Br. 2, R.146. Plaintiff most recently worked at a sandwich shop for one month in March 2005. R. 16, 337. Plaintiff has had a variety of jobs over the years including: restaurant bus person from March 2003 until April 2003; hotel housekeeper from January 2003 until April 2003; convenience store clerk from January 2001 until August 2001; and day care worker from January 2000 until August 2000. R. 98. The VE found that the skill level of the jobs held by Plaintiff was light and on the low end of semi-skilled. R. 360.

Prior to Plaintiff's March 19, 2004 application for SSI benefits, the record shows she stayed at the Medical Center of Beaver from January 26, 2004 to January 30, 2004. R. 153-73. Plaintiff claimed that she felt depressed, found it difficult to focus, had trouble sleeping, had numbness in her left arm, and heard voices in her head. R. 158. She denied suicidal or homicidal thoughts and said she was not taking medication on a regular basis. R. 158. A physical examination performed by Gail Shumway, M.D., revealed that Plaintiff was in no acute distress, and did not suffer from obvious auditory or visual hallucinations despite the "unusual affect" of smiling during most of the interview when it was not appropriate. R. 160. While Plaintiff complained of numbness in the left arm and hand, she had no accompanying weakness. R. 160.

On January 27, 2004, Edward C. Pierson, M.D. performed a psychiatric evaluation of

Plaintiff. R. 164. At the time, Plaintiff complained of increased stress, denied suicidal, homicidal and paranoid ideation, but reported auditory hallucinations. R. 164-165. Dr. Pierson found Plaintiff calm and cooperative, her speech was goal-oriented, and her thoughts were organized. R. 165. Dr. Pierson diagnosed Plaintiff with depressive disorder not otherwise specified and borderline personality traits. R. 165.

Also on January 27, 2004, Dr. Bryan Negrini performed a physical examination on Plaintiff, and noted that she suffered from depression, questionable psychosis and questionable heart murmur. R. 167. Plaintiff had reported that a chiropractor found a pinched nerve in her neck which she treated with Advil, and she also reported chest pain. R. 167. Dr. Negrini opined that Plaintiff suffered from questionable cervical radiculopathy, and did not recommend further testing for the heart murmur because both a recent echocardiogram and electrocardiogram were negative. R. 168.

Upon discharge from the Medical Center of Beaver on January 30, 2004, Dr. Pierson noted that Plaintiff had an improved mood with medication. R. 162. Her affect was bright and full, and she was cognitively intact. R. 162. Discharge diagnoses included depressive disorder not otherwise specified, borderline personality traits, left arm numbness, and heart murmur by history. R. 163. She was discharged with the instructions to continue treatment with Western Psychiatric Institute and Clinic (WPIC) Beaver Valley Outpatient Department. R. 163.

On March 3, 2004, spine x-rays showed straightening, but otherwise a normal cervical spine, and a normal lumbar spine. R. 193-94. A March 15, 2004 EMG/NCV study of the upper left extremity revealed: (1) normal nerve conduction studies of both motor and sensory fibers; (2) no evidence of carpal tunnel syndrome; and (3) probable left C-6 chronic radiculopathy. R. 192. An April 4, 2004 x-ray showed an entirely normal left shoulder with no evidence of rotator cuff syndrome. R. 189.

On April 30, 2004, Dr. D. Kelly Agnew performed a physical examination due to complaints of pain in the left upper extremity. R. 196-97. Plaintiff believed she suffered from rotator cuff syndrome despite x-rays indicating no evidence of such injury. R. 189, 196. During examination, Dr. Agnew noted that when distracted, Plaintiff's shoulder, elbow and wrist motion

were full passively. R. 196. However, when talking about her shoulder, Plaintiff exhibited significant limitation of motion and complained of diffuse pain. Dr. Agnew found no anatomic explanation for this behavior, stating: "left upper extremity complaints without evidence of structural pathology." R. 196.

On May 7, 2004, Roger Glover, Ph.D., a state agency psychological consultant, completed a Psychiatric Review Technique Form (PRTF). R. 219-213. While Dr. Glover found that Plaintiff had an affective disorder (R. 199), he opined Plaintiff's condition would not significantly, or only moderately, limit Plaintiff's ability to engage in employment. R. 214-15. Dr. Glover found that Plaintiff "remains alert, oriented and generally self-sufficient," and "mentally capable of carrying out routine work arrangements." R. 216. Dr. Glover also commented that Plaintiff's allegations about her mental health were only "partially credible." R. 216.

On May 14, 2004, state agency medical consultant Nghia Tran, M.D., performed a physical residual functional capacity assessment in response to Plaintiff's SSI claim. R. 218-224. The assessment revealed that in an eight-hour workday, Plaintiff could lift and/or carry fifty pounds occasionally, lift twenty-five pounds frequently, stand or walk for six hours, sit for six hours, and push or pull without limitation. R. 219. Upon consideration of the medical source opinion evidence, Dr. Tran found no anatomic explanation for Plaintiff's complaints of pain and limitation. R. 223. Based on the evidence of record, Dr. Tran found Plaintiff's statements partially credible, as no structural pathology explained her complaints, and found her described daily activities inconsistent with limitations indicated by other evidence in the case. R. 224.

From May 2004 until January 2006, Plaintiff received psychiatric treatment and evaluation at the WPIC Beaver Valley Outpatient Department from Dr. Mikhail Vassilenko, Dr. Ashraf Helmy, and a therapist. R. 239-276. Dr. Vassilenko regularly saw Plaintiff and diagnosed her with Depression Not Otherwise Specified (NOS) and a personality disorder. R. 240-275.

In an August 2004 session with her therapist, Plaintiff was "stressed" and "persistent about focusing on how badly she [was] treated by her family." The therapist suggested she focus instead on the future, noting that Plaintiff continued to rely on receiving SSI. R. 271. When the therapist challenged Plaintiff to consider what she would do if she did not qualify, Plaintiff asked

the therapist to be "more specific and elaborate on what people need to 'have' to qualify for SSI." R. 271. In a September 2004 session, Plaintiff said her mood was "fine" and the therapist noted her affect was "bright" and "spontaneous." R. 267. The therapist noted Plaintiff's continued focus on how her mental problems prohibited her from working and blamed her stress on family. R. 267. Plaintiff terminated therapy with her therapist in December 2004, stating that she did not think therapy was helpful. R. 264. While Plaintiff repeatedly told the therapist that she would never become employed due to her issues, she planned to run a pierogie business from her home. The therapist opined that Plaintiff was malingering in order to secure SSI. R. 264.

Beginning in January 2005, and continuing through December 2005, Dr. Vassilenko no longer included personality disorder among his diagnoses. R. 240-43, 251-56. In March 2005, Plaintiff said she was doing "so-so" but said she had less anxiety and her mood and energy had improved. R. 254. In April 2005, Vassilenko noted Plaintiff's normal speech and psychomotor activity. In addition, she did not appear disheveled, and there was no evidence of auditory hallucinations, paranoia, suicidal or homicidal ideation, or poor insight. R. 250. Plaintiff, however, continued to complain of depression. R. 250.

In July 2005, Vassilenko referred Plaintiff to a partial hospital program after complaining of increased depression following the death of her grandmother. R. 251. Dr. Helmy treated Plaintiff during her partial hospital program at WPIC, which she attended from August 3, 2005 until August 25, 2005. R. 244-45. Plaintiff's treatment goals were to have an improved and stabilized mood, an absence of depression, fears, and anxiety, improved sleeping patterns, improved concentration, and report having an increase in interests. R. 244. She was also to attend group therapy five days a week. R. 244. Helmy noted that Plaintiff was compliant throughout her stay, but had minimal group participation. R. 244. Helmy's evaluations found no evidence that Plaintiff suffered from mania or hympomania, (R. 248) instead finding Plaintiff alert, oriented x3, exhibiting no signs of impulsive behavior, and improved mood swings. R. 246, 248.

Under Dr. Helmy's care, Plaintiff eventually sought more one-on-one therapy, stating she had a hard time discussing her issues in groups and desired more private time. R. 244. Helmy stated that Plaintiff's family was very supportive, noting that her father attended a family

5

session. R. 244. Due to Plaintiff's request for more individual therapy, Helmy discharged her on August 25, 2005. R. 244-45. Her discharge diagnosis was Depressive Disorder NOS, with a GAF of 58. The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) 34 (4th ed. 2000). Plaintiff's score indicated that she had "moderate symptoms," and experienced "moderate difficulty in social, occupational, or school functioning." *Id.*

In September and October 2005, Dr. Vassilenko noted that Plaintiff was doing better. R. 242, 43. Vassilenko specifically noted that Plaintiff appeared less anxious and was compliant with her medications. R. 242.

On February 21, 2006, Dr. Vassilenko completed a Psychiatric Review Technique Form (PRTF). R. 280-93. On the cover page, Vassilenko checked the appropriate boxes to indicate that Plaintiff had an affective disorder and a personality disorder, leaving the organic mental disorder and anxiety-related disorder boxes unchecked. R. 180. However, on the subsequent pages of the same form, he indicated that Plaintiff did in fact suffer from organic mental and anxiety related disorders. R. 281, 285. When asked to rate Plaintiff's functional limitations, Vassilenko failed to specify which disorder he evaluated. R. 290. At this point, he had opined that Plaintiff suffered from affective, personality, organic mental and anxiety-related disorders. Furthermore, Vassilenko failed to offer a definitive opinion on the functional limitation criteria, finding that Plaintiff's limitations fell between categories. R. 290. Finally, while Vassilenko checked the box stating Plaintiff suffered from 12.04C of the affective disorders (R. 280), he found she did not meet the required criteria for 12.04 later in the evaluation. R. 283.

Following the ALJ's adverse decision on March 23, 2006 (R. 20), Plaintiff submitted additional records to the Appeals Council, including a May 10, 2006 letter from therapist Robert S. Ruckert, M.S., co-signed by Dr. Vassilenko, (R. 309) a March 1, 2006 PRTF completed by Dr. Vassilenko (R. 310-23) and a February 23, 2006 thermographic scan. R. 324-325.

**IV.    STANDARD OF REVIEW**

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority

7

under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V.   DISCUSSION

Plaintiff argues that the ALJ's determination merits reversal by this Court for four reasons. First, Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's impairment under 12.08 (personality disorder) and 12.02 (mental disorder). Second, Plaintiff contends that the ALJ failed to properly evaluate whether Plaintiff's alleged impairments met or equaled a listing under 20 C.F.R. Ch. III, Pt. 404, Subpt. P. Third, Plaintiff asserts the ALJ erred in determining the Plaintiff's residual functional capacity. Fourth, Plaintiff asserts the ALJ failed to make the proper credibility findings regarding the Plaintiff's testimony.

The ALJ used the five-step process described above and outlined by the Social Security Act to evaluate Plaintiff's SSI claim. 20 C.F.R. § 404.1520(a). The ALJ acknowledged the medical claims presented by the Plaintiff such as degenerative disc disease of the cervical spine, depression and anxiety. R. 16. The ALJ indicated that the Plaintiff's impairments were severe. R. 16. The ALJ then determined whether Plaintiff's impairments met the severity of impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. In his evaluation of Plaintiff's impairments,

the ALJ found the medical evidence of record did not indicate Plaintiff's severe impairments met the requirements of Listing 1.04. R. 16.

The ALJ was not required to consider listing 12.02 (organic mental disorder) and 12.08 (personality disorder) because the evidence as a whole did not support these diagnoses. Plaintiff relies on the February 2006 PRTF completed by Dr. Vassilenko to support her claim that the ALJ erred in failing to consider these conditions. As previously discussed, Dr. Vassilenko's findings are not entirely clear – the report was inconsistent regarding part "A" criteria, lacked specificity as to part "B" criteria, and therefore, failed to constitute a definite opinion as to part "B" criteria. R. 280-93. Oddly, Dr. Vassilenko's PRTF stated that Plaintiff's personality disorder existed from March 2004 through the present (R. 280), yet his medical reports had not included this condition since January 2005. Furthermore, while Dr. Vassilenko checked the box indicating Plaintiff suffered from organic medical disorder (R. 281), he had never made mention of this condition in previous medical reports. The record shows no evidence of Plaintiff's prior diagnosis of this condition by any physician or psychologist.

Plaintiff referred to Dr. Pierson's diagnosis and Dr. Glover's medical analysis to further support her claim that she suffers from a Personality Disorder (12.08). In January 2004, Dr. Pierson's diagnosis included Depressive Disorder NOS and borderline personality *traits*, not borderline personality *disorder*. R. 162, 165 (Emphasis added). Dr. Glover considered the Plaintiff's condition in May 2004. In his capacity as the state agency psychological consultant, Dr. Glover evaluated Plaintiff's medical records but did not independently meet with Plaintiff. Based on his review of the evidence, Dr. Glover found that Plaintiff did not have an Organic Mental Disorder (12.02) or a Personality Disorder (12.08). R. 199. While he did consider Plaintiff's records from the WPIC, which found a personality disorder (R. 213), he did not agree with this diagnosis. Furthermore, Dr. Helmy independently evaluated Plaintiff in August 2005 and limited her diagnosis to Depressive Disorder NOS. R. 245.

Even if the ALJ had accepted Dr. Vassilenko's assessment that Plaintiff suffered from a personality disorder, it would not meet the twelve-month durational requirement. An impairment must have lasted or be expected to last for a continuous period of at least twelve months. 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909 (2006). While Dr. Vassilenko's June 2004 diagnosis of Plaintiff included personality disorder, he no longer included this after January 2005 and continuing through December 2005. R. 240-43, 251-56. Therefore, Plaintiff would not be able to meet the Act's strict durational requirement.

Dr. Vassilenko's second PRTF dated March 1, 2006, which was submitted to the Appeals Council after the ALJ rendered his adverse decision, cannot be considered by this Court. The Third Circuit has explicitly held that a court cannot consider such evidence when performing its substantial evidence review. *Matthew v. Apfel*, 239 F.3d 589, 593-95. (3d Cir. 2001). The propriety of the ALJ's decision can only be judged based upon the evidence that was before the ALJ. *Id*. While this Court cannot consider the additional evidence in determining whether the Commissioner's decision was supported by substantial evidence, it may, pursuant to 42 U.S.C. § 405(g), remand this case if the additional evidence is "new", "material", and "good cause" exists for failing to present the ALJ with this evidence. *Id*. at 595. These factors need not be applied here because Plaintiff does not argue that the March 2006 PRTF submitted to the Appeals Council be considered by this Court. Pl.'s Reply Br. 9.

Plaintiff next argues that the ALJ failed to properly evaluate whether Plaintiff's alleged impairments met or equaled a listing under 20 C.F.R. Ch. III, Pt. 404, Subpt. P. There is no merit in this argument, as the Third Circuit has held that a claimant must show that her condition meets or equals the specific clinical requirements of an impairment in the Listing of Impairments before she can be considered disabled per se without consideration of vocational factors such as age, education and work experience. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988), citing *Kansas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). To be entitled to disability benefits, a claimant must show that all, and not only some, of the criteria for a listing are met. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). An impairment that meets some, but not all of the criteria for a listed impairment "no matter how severely, does not qualify." *Id.*

Using the totality of the record, the ALJ properly found that Plaintiff did not satisfy the "B" criteria under the applicable listings. The evidence showed that Plaintiff had mild limitations in activities of daily living, moderate limitations in social functioning, moderate limitations in

her ability to maintain concentration, persistence or pace, and no repeated episodes of decompensation, each of extended duration. R. 16-17. The ALJ further found that Plaintiff did not meet the "C" criteria under Listing 12.04 because the record did not show repeated episodes of decompensation of extended duration. The ALJ further noted that Plaintiff's January 2004 hospitalization and December 2005 partial hospital program participation had been brief. R. 17.

With regard to the PRTF submitted by Dr. Vassilenko (R. 280-93), the ALJ found it inconsistent with Dr. Vassilenko's medical records. While Vassilenko checked the box indicating that Plaintiff met "C" criteria, he did not reference or discuss the episodes of decompensation, residual disease process, or inability to function outside a highly-structured environment as required under the "C" criteria. R. 17. The ALJ also questioned Dr. Vassilenko's findings under the "B" criteria due to his failure to identify the decompensation episodes or explain the level of severity chosen for each category. R.17. Furthermore, the ALJ accurately noted that the record failed to establish three episodes of decompensation which is required under the part "B" criteria of listings for mental impairments. R. 17.

Plaintiff's testimony undercut Dr. Vassilenko's findings in the PRTF. Plaintiff testified that she lived on her own for over one year, her daily activities included shopping for clothes and groceries, washing dishes, doing laundry, cleaning, cooking, caring for personal needs, visiting with family and going to the movies. R. 134-36, 143-44, 358. The record also shows that one year after the alleged date of disability, Plaintiff completed a questionnaire on her own, in her own handwriting (R. 109-18) despite testifying that she has difficulty writing. R. 342.

Dr. Glover's evaluation of Plaintiff further supports the ALJ's decision. Dr. Glover evaluated the evidence and determined that Plaintiff's alleged mental impairments did not manifest at listing level severity. R. 209-10. Dr. Glover opined that Plaintiff was capable of performing routine assignments and following a normal work schedule. According to federal regulations, the Commissioner's designated physicians, psychologists, and consultative medical specialists have the authority to make medical judgments regarding whether a psychological condition meets or equals the requirement of a listed impairment. R. 216. See 20 C.F.R. §§ 416.925, 416.926, 416.927 (2006). Dr. Glover, in his capacity as a state agency psychological

consultant, determined that Plaintiff's condition did not meet or equal parts "B" or "C" under the listings for mental disorders. R. 209-10. Furthermore, Plaintiff's argument that Dr. Glover's evaluation should be discounted because he used evidence of the record is false. Evaluations made using evidence of the record by state agency physicians and psychologists can constitute substantial evidence. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Plaintiff also argues that the ALJ improperly failed to consider the combined effects of her impairments in determining whether her impairments met or equaled the listing. Plaintiff specifically alleges that the ALJ "does not discuss or evaluate [Plaintiff's] degenerative disc disease as to her symptoms, or even the evidence." Pl.'s Br. 19. This is false. The ALJ addressed Plaintiff's degenerative disc disease under the muskoskeletal listings, noting that the specific findings required were not present in the record. R. 16. In evaluating Plaintiff's functional work capacity, the ALJ gave Plaintiff's evidence great weight, stating that her "cervical problems reasonably may be expected to limit her strength and mobility and even rule out repetitive use of her dominant arm and overhead work." R. 18. Therefore, the ALJ specifically considered Plaintiff's evidence regarding her degenerative disc disease in combination with her other impairments in step three and gave this condition even further consideration in step four of the evaluation. R. 16-19.

Plaintiff argues that the ALJ erred in failing to get an updated medical opinion of her condition. The final responsibility for determining whether a claimant's impairment(s) meets or equals the requirements of any impairments in the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app.1, is reserved to the Commissioner, who will not give special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3) (2006); SSR 96-6p. An ALJ is only required to obtain an updated medical opinion from a medical expert under the following circumstances:

> [w]hen no additional medical evidence is received, but in the opinion of the administrative law judge or Appeals Council…[the] record suggest[s] that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the administrative law judge…may change the State agency medical or psychological consultant's finding that the impairment(s) is not equal in severity to any impairment in the Listing of Impairments.

12

SSR 96-6p. Therefore, as the finder of fact, the ALJ can use his discretion to determine whether the record suggests that judgment of equivalence would have been reasonable, or to determine whether any of the additional evidence would have changed the findings of the medical and psychological consultants on the issue of equivalence. SSR 96-6p. The ALJ's finding on the issue of equivalence was consistent with the findings of the state agency medical and psychological consultants. R. 42, 115-17, 227-31, 290-93. Therefore, it can be inferred that the ALJ found no additional evidence which led him to question the findings of the state agency medical and psychological consultants. Therefore, there is no need for the ALJ to obtain an updated medical opinion from a medical expert.

Plaintiff next argues that the ALJ erred in determining the claimant's residual functional capacity. More specifically, Plaintiff argues the ALJ should have given Dr. Vassilenko's medical opinion controlling weight. The ALJ, however, is not required to unequivocally accept a physician's opinion. A medical source opinion regarding a claimant's ability to work is not entitled to any special deference. The ALJ may use his discretion, in consultation with medical opinion, to determine residual functional capacity. 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p.

Here, the ALJ had reason to discount Dr. Vassilenko's medical opinions. The ALJ discussed Dr. Vassilenko's records and PRTF findings in considerable detail and determined that his medical records did not support the PRTF findings. R.17 For example, Dr. Vassilenko stated that Plaintiff met the requisite number of decompensation (3), while his records only listed one episode of decompensation. R. 17.

The ALJ considered other substantial evidence in the record, including Plaintiff's therapist, who opined that Plaintiff was malingering in obtaining work in order to secure SSI, ®. 18, 164), and Dr. Glover, who opined that she did not meet or equal a listed mental impairment and was capable of working. R. 19, 199, 209-10, 216. For these reasons, the ALJ was correct in his assertion that Dr. Vassilenko's medical opinion was not entitled to controlling weight.

Lastly, the ALJ did not err in asserting that Plaintiff's subjective statements regarding her physical and mental health are not entirely credible. Dr. Glover's functional capacity assessment

in the PRTF stated that Plaintiff's allegations were partially credible. R. 216. Plaintiff's therapist at WPIC opined that she was intentionally malingering in order to receive SSI benefits even though she had plans to operate a pierogie business from her home. R. 18, 264. Dr. Tran, the state agency physician, found Plaintiff's statements partially credible. Dr. Train said that while Plaintiff complained of neck and left upper extremity pain, orthopedic examination found no structural pathology to explain her complaints. R. 224.

Furthermore, Plaintiffs description of daily activities was not consistent with the limitations exhibited in other case evidence. R. 244. Dr. Agnew opined that Plaintiff engaged in symptom magnification – when Plaintiff was distracted her shoulder, elbow and wrist motion were simply full passively. However, when talking about her shoulder she exhibited significant limitation of motion. R. 296.

Furthermore, the ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir. 1984). The ALJ's credibility determinations need only be supported by substantial evidence on the record. Here, the ALJ considered Plaintiff's subjective complaints and assessed them in the context of the entirety of the medical evidence, determining her statements concerning the "intensity, duration and limiting effects" of the symptoms were not entirely credible. R. 19. Therefore, substantial evidence supports the ALJ's credibility determination.

## VI.   CONCLUSION

For the foregoing reasons, the Court finds that the decision of the ALJ was supported by substantial evidence. Accordingly, the decision of the ALJ will be affirmed. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Katrine Erie, Esquire
316 West Jefferson Street
Butler, PA 16001

Megan Farrell
Assistant U.S. Attorney